UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERICH BAESKE,

        Plaintiff,

v.
                             Case No. 1:04-CV-492
                             Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on December 26, 1948 and completed high school (AR 46, 65).[1] Plaintiff stated that he became disabled on April 16, 2000 (AR 46). Plaintiff had previous employment as a department technician with the State of Michigan (AR 60). He identified his disabling conditions as major depression, severe stress, insomnia, severe weight loss, mood instability, anxiety, panic attacks, difficulty leaving his house and fear of social contact (AR 59). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on May 19, 2003 (AR 17-25).

---

[1] Citations to the administrative record will be referenced as (AR "page #").

1

This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months.  *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905

F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a

five-step analysis:

> The Social Security Act requires the Secretary to follow a
> "five-step sequential process" for claims of disability.  *Abbott v.
> Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, plaintiff must
> demonstrate that she is not currently engaged in "substantial gainful
> activity" at the time she seeks disability benefits. *Id.*  (citing 20 C.F.R.
> §§ 404.1520(b) and 416.920(b)(2000)).  Second, plaintiff must show
> that she suffers from a "severe impairment" in order to warrant a
> finding of disability.  A "severe impairment" is one which
> "significantly limits . . .  physical or mental ability to do basic work
> activities."  *Id.*  (citing 20 C.F.R. §§ 404.1520(c) and
> 416.920(c)(2000)). Third, if plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected to last for
> at least twelve months, and the impairment meets a listed impairment,
> plaintiff is presumed to be disabled regardless of age, education or
> work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).
> Fourth, if the plaintiff's impairment does not prevent her from doing
> her past relevant work, plaintiff is not disabled. For the fifth and final
> step, even if the plaintiff's impairment does prevent her from doing
> her past relevant work, if other work exists in the national economy
> that plaintiff can perform, plaintiff is not disabled. *Abbott*, 905 F.2d
> at 923.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001).

The claimant bears the burden of proving the existence and severity of limitations

caused by her impairments and the fact that she is precluded from performing her past relevant work

through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).

However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant

number of jobs in the economy that accommodate the claimant's residual functional capacity

(determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not

disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation.  Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability (AR 24).  Second, the ALJ found that he suffered from "alcohol dependence and abuse, now in remission; affective disorder; degenerative joint disease of the hips; and peripheral neuropathy due to alcohol abuse, a combination of impairments considered 'severe' based on the requirements in the Regulations" (AR 24).  At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 24).  The ALJ decided at the fourth step that plaintiff had the residual functional capacity:

> to perform work except for lifting and carrying more than 20 pounds occasionally and ten pounds frequently and walking more than occasionally for more than short periods of time.  The claimant has moderate limitations in the ability to maintain attention and concentration for extended periods of time and interact appropriately with the general public.

(AR 25).  The ALJ further concluded that plaintiff was unable to perform any of his past relevant work (AR 25).

At the fifth step, the ALJ determined that plaintiff was capable of performing a significant range of light work (AR 25).  Specifically, the ALJ found that an individual with plaintiff's limitations could perform the following jobs in Michigan: attendant/cashier (8,000 jobs); attendant (2,000 jobs); bench assembler (8,000 jobs); and an inspector/packager (8,000 jobs) (AR

24-25). The ALJ also found plaintiff's allegations regarding his limitations were not totally credible (AR 24). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 25).

## III.  ANALYSIS

Plaintiff did not set forth a statement of errors as required by the court's order directing filing of briefs (docket no. 6). However, the gist of plaintiff's argument is that the ALJ posed an incomplete hypothetical question to the vocational expert which did not accurately describe plaintiff's limitations. Plaintiff's Brief at 13-19. Specifically, plaintiff contends that the ALJ's hypothetical question: (1) did not include reference to his "deficiencies in concentration, persistence and pace that resulted in failure to complete tasks in a timely manner," (2) did not indicate how often plaintiff's concentration deficits would result in incomplete tasks; (3) did not include the ALJ's finding that plaintiff has moderate difficulties in social functioning and moderate limitations in ability to interact appropriately with the public; and (4) did not elaborate on any of plaintiff's mental limitations "but rather summarily concluded that plaintiff was limited to unskilled work 'for reasons of mental difficulties.'"  Plaintiff's Brief at 12-16.

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question which accurately portrays the claimant's physical and mental impairments. *Id.*  However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of*

5

*Health and Human Servs.*, 927 F.2d 228,  231 (6th Cir. 1990).  *See also Stanley v. Secretary of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

> The ALJ posed the following hypothetical question to the VE:
>
> Okay.  Well, it's considered to be a person closely approaching advanced age under the categories of the Social Security regulations, has a high school education, does not have difficulties with communication.  Assume a person with the residual functional capacity to perform light work and for purposes of this question, assume it's unskilled from that -- for reasons of mental difficulties I would conclude that he's not capable of performing skilled work either due to some problems with social interactions or perhaps some mild or to [sic] moderate limitations on concentration, persistence, and pace.  So really, say, in light work and I'll add as a condition walking no more than 10 to 15 minutes at a time, apparently no particular restrictions on standing or sitting.  Main difficulty with exertional seems to be walking.  Would there be any jobs in the regional or national economy that such a person could perform?

(AR 267-68).

In response, the VE identified four types of jobs.  First, 8,000 jobs as an attendant cashier, as in a self-service gas station (AR 268).  The VE explained that these jobs involve "no skill factor" because of the use of automated cash register systems, with the only "skill" being counting out change (AR 268).  Second, about 1,000 jobs as an "attendant" that might check out cars in the parking lots at a hospital or office complex (AR 268).  Such jobs would be under cover in a booth and might require policing the area by walking 10 to 15 minutes at a time, for three or four times a day (AR 268).  The VE identified this as light work (AR 268).  Third, about 1,000 security jobs in buildings, checking doors and windows, requiring about 10 to 15 minutes of walking at a time (AR 268).  The VE combined the attendant/security jobs together to total 2,000 jobs, noting that both jobs

could require lifting 10 pounds (AR 268-69).Fourth, about 8,000 jobs as a bench assembler "putting together products that might weigh 10 pounds fully assembled but less than that would be not more than three or four components" (AR 269).  Fifth, about 8,000 inspector/packager jobs, which could involve packaging parts, some of which would weigh over 10 pounds (AR 269).

The VE testified that the attendant cashier jobs would involve contact with the public, but the assembler inspector and other attendant jobs would have contact only with supervisors (AR 270).  In addition, the assembler inspector and other attendant jobs would not require other people to be dependent on the individual's pace or output (AR 270).  In answering a question by plaintiff's attorney, the VE testified that while the bench assembler job involved quotas, it did not involve controlling other people or being controlled by people other than supervisors (AR 270-71).

### A.    Plaintiff's failure to complete tasks in a timely manner and inability to finish tasks

In the body of the decision, the ALJ found that:

> The claimant has moderate deficiencies in concentration, persistence or pace resulting in failure to complete tasks in a timely manner.  He can sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks; however, he has some deficiencies in this area which result in incomplete tasks.

(AR 22).   Plaintiff correctly points out that the ALJ's hypothetical question did not specifically address the inability to complete tasks in a timely manner.  The ALJ's hypothetical question assumed "some mild or to [sic] moderate limitations on concentration, persistence, and pace," without additional reference to the ability to complete tasks in a timely manner (AR 267).  Plaintiff's counsel touched on the "task completion" issue, by asking the VE if the bench assembly jobs

required a "production standard" (AR 270). In response, the VE testified that "there are quotas certainly" (AR 271). However, there is no further testimony on the issue.

Based on this record, the ALJ did not consider plaintiff's deficiencies in completing tasks to be severe. Rather, he concluded that plaintiff had moderate deficiencies, that he had sufficient attention and concentration "to permit the timely and appropriate completion of tasks," but that he had "some deficiencies in this area which result in incomplete tasks" (AR 22). The ALJ's decision appears to be inconsistent (if not contradictory) with respect to plaintiff's ability to complete tasks. However, this inconsistency is not a sufficient basis to require a remand for additional vocational evidence. "No principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989). "When 'remand would be an idle and useless formality,' courts are not required 'to convert judicial review of agency action into a ping-pong game.'" *Kobetic v. Commissioner of Social Security*, No. 03-2136, 2004 WL 2491074 at *2 (6th Cir. Nov. 4, 2004), *quoting NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969). Even if the ALJ eliminated the 8,000 bench assembly jobs on the basis that plaintiff could not complete tasks and meet production quotas, the ALJ found that plaintiff could still perform 18,000 other jobs. Given this record, plaintiff could still perform a significant number of jobs in the national economy. *See* 20 C.F.R. § 404.1520. Accordingly, the court finds no reason to disturb the ALJ's decision.

### B. Unskilled work restriction

Next, the court disagrees with plaintiff's contention that a limitation involving "unskilled work" is inappropriate to accommodate mental impairments. "Unskilled work,"

8

incorporates some non-exertional components, because it consists of "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). Unskilled work includes jobs require little specific vocational preparation or judgment and can usually be learned in 30 days. *Id.* Such work involves simple and routine tasks. *Allison v. Apfel*, No. 99-4090, 2000 WL 1276950 at *4 (6th Cir. Aug. 30, 2000).

An ALJ's hypothetical question limiting a claimant to unskilled work accommodates a claimant's deficiencies in concentration. *See, e.g., Fischer v. Barnhart*, No. 02-2830, 2003 WL 328326 at *2 (8th Cir. Feb. 12, 2003) (court notes that an unskilled work limitation in a hypothetical question accommodated claimant's alleged mental impairments of depression and a pain disorder); *Parven-McGladdery v. Commissioner*, No. 02-1052, 2002 WL 31780954 at * 2 (6th Cir. Dec. 11, 2002) (where claimant often experienced deficiencies in concentration, the ALJ accommodated this impairment by limiting her to unskilled work that did not require detailed or complex assignments, or high levels of stress or production); *Santiago v. Secretary of Health and Human Services*, No. 94-1891, 1995 WL 30568 at *1, 3 (1st Cir. Jan. 25, 1995) (ALJ's hypothetical which assumed the inability to perform unskilled work adequately accommodated claimant's mental impairment of a mild anxiety disorder that included symptoms such as irritability, fearfulness, difficulty sleeping, headaches, sensitivity to noise and depression); *Thomas v. Secretary of Health and Human Services*, No. 93-3269, 1994 WL 135224 at *4 (10th Cir. April 18, 1994) (given definition of 'unskilled work," claimant could perform sedentary unskilled work despite contention that she was unable to understand, remember and carry out complex instructions). *See generally, Smith v. Halter*, 307 F.3d 377, 378-79 (6th Cir. 2001) (where ALJ found that claimant often suffered problems with

9

concentration, limiting claimant to jobs that are routine and low stress and which do not involve intense interpersonal confrontations appropriately addressed that impairment).

Accordingly, the ALJ's hypothetical question adequately accommodated plaintiff's mental impairments "due to some problems with social interactions or perhaps some mild or to moderate limitations on concentration, persistence, and pace," by restricting him to unskilled work (AR 267-68).

### C. Moderate limitations in social functioning and interacting appropriately with the public

Finally, plaintiff contends that the ALJ did not address his limitations in social functioning and interacting with the public. Specifically, plaintiff states that "[i]t is preposterous to perform a cashier and attendant job without dealing with the public." Plaintiff's Brief at 13. The court disagrees. The ALJ found that plaintiff had moderate limitations in social functioning and interacting with the public and included this limitation in the hypothetical question posed to the VE (AR 267-68). Given this restriction, the VE gave examples of a self-service gas station cashier and parking lot attendant as jobs that had limited interaction with the public (AR 267-70). Plaintiff's counsel did not object to the VE's qualifications to testify as an expert at the administrative hearing (AR 265). Now, plaintiff contends that portions of the VE's opinion are "preposterous," specifically the VE's testimony that plaintiff could perform some 9,000 jobs as an attendant/cashier and parking lot attendant (AR 268).

In short, plaintiff disagrees with the VE's conclusions and wants this court to reject the VE's opinion. This court cannot make this a *de novo* determination of the VE's credibility. *See Sias v. Secretary of Health & Human Servs.*, 861 F.2d 475, 481-82 (6th Cir. 1988). Plaintiff cannot

contest the VE's qualifications after conceding those qualifications at the administrative hearing.

See Yopp-Barber v. Commissioner, No. 02-1628, 2003 WL 192121 at *2 (6th Cir. Jan. 27, 2003)

("[c]ounsel for Yopp-Barber cannot now contest the general qualifications of the VE after expressly

conceding the qualifications in the hearing before the ALJ").  A claimant's failure to dispute the

VE's competency at the administrative hearing forfeits the issue for purposes of judicial review.

Helton v. Commissioner, No. 99-5736, 2000 WL 658056 at *2 (6th Cir. May 9, 2000).  Accordingly,

this court should reject plaintiff's claim contesting the validity of the VE's opinion.

## IV.    Recommendation

For all the reasons discussed above, I respectfully recommend that the

Commissioner's decision be affirmed.


Dated:  July 12, 2005                      /s/ Hugh W. Brenneman, Jr.
                                           Hugh W. Brenneman, Jr.
                                           United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk
of the Court within ten (10) days after service of the report.  All objections and responses to
objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections
within the specified time waives the right to appeal the District Court's order.  Thomas v. Arn, 474
U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).